LEAR, Judge.
During the night of November 19, 1965, petitioner Max E. Shaw was riding in a Mustang automobile owned and operated by one Lonnie J. DeLatin. These two men departed from Many, Louisiana, shortly before 10:00 P.M. on Highway 171 to return to their homes in Shreveport, Louisiana.
While still in Sabine Parish, their automobile suffered a head-on collision with a 1963 Oldsmobile owned and operated by Gary S. Rieck. As a result of this collision both Mr. DeLatin and petitioner Shaw suffered grievous injuries and Mr. Rieck, who was alone in his automobile, was instantly killed.
Petitioner initially asks judgment against New York Fire & Marine Underwriters, Inc., alleging that the accident was due solely and only because of the negligence of its insured Gary S. Rieck. In the alternative, petitioner asks for judgment against both *688 New York Fire & Marine Underwriters, Inc., and Liberty Mutual Insurance Company, the liability insurer of Lonnie J. De-Latin, alleging the concurrent negligence of their respective insureds. Mr. Shaw not only alleges, but shows by evidence on trial, painful, serious and abiding personal injuries, together with loss of wages and medical and hospital expenses. It is to be noted that Lonnie J. DeLatin is not named as a party defendant, and any negligence on his part is alleged only alternatively.
New York Fire & Marine Underwriters, Inc., the liability insurer of Gary S. Rieck, answered plaintiff’s petition denying any negligence on the part of its assured, and alleging the negligence of Lonnie J. DeLatin as the sole cause of the accident. It then alternatively pleaded the contributory negligence of Lonnie J. DeLatin and made a third party demand against Liberty Mutual Insurance Company, DeLatin’s liability insurer, for one-half of any sums for which it might be cast in judgment.
As a result thereof, Liberty Mutual Insurance Company answered the principal demand and the third party demand denying negligence on the part of its assured, Lonnie J. DeLatin, and alleged that the accident was caused solely by the negligence of Rieck. Then, in the alternative, it asserted that if its assured, DeLatin, was guilty of negligence contributing to the accident, then Max E. Shaw was guilty of independent contributory negligence barring his recovery.
We now quote from the excellent written reasons for judgment of the trial court:
“The undisputed facts of this case show that the two motor vehicles were traveling in opposite directions, between the hours of 10:00 o’clock and 11:00 o’clock •P.M. on a very foggy night; that situs of the colllision was in the hard-surfaced (blacktop or concrete) highway along a long straight stretch of highway, which is marked by center-line markings only, having wide and safe shoulders on both sides of the highway.
“There were three persons involved in this accident, one of whom was instantly killed, leaving the surviving two as the only eye witnesses, each of whom is a plaintiff herein, and both of whom testified at the trial of these consolidated suits, namely, Lonnie J. DeLatin and his guest passenger, Max E. Shaw.
“If the Court were to accept only the versions of DeLatin and Shaw, then all the blame for the accident would have to be placed on Gary S. Rieck, and consequently the latter’s insurer should be cast in judgment in both suits, for both of these witnesses testified that Gary S. Rieck suddenly drove his southbound Oldsmobile across the center line and into the path of DeLatin’s northbound Mustang which was on the right side of the center line; that the maneuver by Gary S. Rieck was too sudden to allow DeLatin to swerve to his right to avoid the accident and that the cars ran into each other, headlight for headlight. Max E. Shaw testified that just before the collision he hollered a warning to DeLatin and that he (DeLatin) stiffened up to turn right, but it was too late and the car did not respond to the attempt. Shaw testified that they were travelling at a speed of 50-55 miles per hour and that he first saw the Rieck car about 50 yards away. De-Latin’s estimate of his speed was around 45 miles per hour, possibly more or less. DeLatin testified that he first saw the lights of the Rieck car at about 100 yards out and that after closing about half that distance, or about 50 yards, he quit watching the lights and started watching the center line, and just before the impact he had in mind to turn to the right but that he really didn’t think that he did. On cross examination DeLatin testified that he didn’t see the other car across the line because he was just watching the line prior to the accident.
“Sergeant C. J. Miller, with the State Police, investigated the accident and filled out his report, which is filed in evidence as ‘N.Y.F. & M.U. #3’, and he.also testi *689 fied at the trial, having been called by-plaintiff Max Shaw. Sergeant Miller testified that he found no skid marks even when he went back the next day, and that there was very little debris in the vicinity of the wreck, and that this consisted of a little dirt and glass on both sides of the center line of the road, and additionally he found gouge marks on both sides of the center line, one set which pointed to where the Oldsmobile driven by Rieck ended up, and the other similar mark which led off in the general direction of where the Mustang was after the wreck; that these gouge marks were approximately 4-6 inches, and that they were not deep in the hard surface. Sergeant Miller reasoned that these gouge marks were caused by a dropping of the vehicles at these points. In connection with his testimony, with the Court’s permission, he drew a diagram of these physical findings, showing the location of the debris, the gouge marks, and the relative resting positions of the two vehicles after the wreck, which diagram was filed in evidence as Exhibit ‘P-15’. After testifying as to his findings, Sergeant Miller gave his opinion to the effect that both vehicles were on or near the center traveling in opposite directions at a pretty fast rate of speed, considering the foggy conditions. Sergeant Miller found that while both cars were completely demolished, the point of impact on each car was left front and he finally concluded that both vehicles were following the center line and they didn’t see each other even soon enough to hit their brakes. Sergeant Miller’s conclusions appeared consistent with his official report which was filed in evidence as ‘N.Y.F. & M.U. #3’.
“An examination of the photographs of the two vehicles following the wreck, filed in evidence as Exhibits ‘DeLatin #3-7’, supports the conclusion that the two cars contacted each other almost head on, with the very initial contact involving approximately the left one-third of each vehicle.”
* * * * * *
“After carefully considering the testimony of the only eye witnesses and the testimony of findings and conclusions of Sergeant Miller, the investigating trooper, I am convinced by the preponderance of the evidence, that this accident was caused by the combined and concurring negligence of both Gary S. Rieck and Lonnie J. De-Latin, because it is my conclusion that both drivers were doing exactly the same thing; i.e., driving too fast, under extremely foggy and hazardous conditions, guiding on the marked center line of the highway, and by this I mean, lining up the the marked center line with their driver’s position in their cars, which placed each car approximately 3 feet to the left of the center line. Naturally under the extremely foggy conditions neither could see the oncoming headlights of the other in time to make the necessary maneuver to avoid the accident.”
After reaching these conclusions, the trial judge decided that the contributory negligence of Lonnie J. DeLatin bars any recovery in his companion suit, which was consolidated with the principal demand for purposes of trial, and rejected any claim of independent contributory negligence on the part of petitioner herein.
The trial judge then concluded that petitioner had alleged and proved his entitlement to special damages in the sum of $4,-565.97, found extensive and permanent personal injuries and concluded that he should be awarded the sum of $15,000.00 in judgment; defendant New York Fire & Marine Underwriters, Inc., to pay the sum of $5,-000.00, the limit of its liability under its policy, and Liberty Mutual Insurance Company to pay the sum of $10,000.00 that being the limit of its liability under its policy; both awards, of course, carry legal interest.
New York Fire & Marine Underwriters, Inc., forcefully argues its demand for contribution against Liberty Mutual Insurance Company to the effect that it should have and recover judgment against Liberty Mutual Insurance Company to the extent of *690 50% of the award made against it. This would be true if New York Fire & Marine Underwriters, Inc., and Liberty Mutual Insurance Company were co-tortfeasors, but despite the legalistic finding that an insuror stands in the shoes of its insured, this court is convinced that such concept does not extend to the point of making insurors co-tort-feasors to the extent of imposing solidary liability upon them. We think that each insurance company is protected by its maximum exposure as contracted for in its policy, and although this problem may have been differently presented to the court if the insureds or either of them were named defendant, we do not find this to be the case here.
Therefore, the judgment of the district court is affirmed.
Affirmed.
On Applications for Rehearing.
En Banc. Rehearings Denied.